```
                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF KANSAS


CARL W. COX,                      )
                                  )
                Plaintiff,        )
                                  )
vs.                               )     Case No. 07-1370-WEB
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of                   )
Social Security,                  )
                                  )
                Defendant.        )
_____ )
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

   The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II. History of case**

On May 1, 2007, administrative law judge (ALJ) Melvin B. Werner issued his decision (R. at 13-22).  Plaintiff is insured for disability insurance benefits through March 31, 2008 (R. at 15).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since January 31, 2003, the alleged

4

onset date (R. at 15).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease with L1 disc collapse.  The ALJ further determined that plaintiff's chronic obstructive pulmonary disease/emphysema, history of reflux disease, fatigue and depression are non-severe (R. at 15).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15-16).  After determining plaintiff's RFC (R. at 16), the ALJ found at step four that plaintiff was unable to perform past relevant work (R. at 20).  At step five, the ALJ found that plaintiff can perform jobs that exist in significant numbers in the national and regional economies (R. at 21).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21).

**III.  Did the ALJ err in the weight accorded to plaintiff's treating physician, Dr. Terry Morris?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A

treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.  Watkins, 350

6

F.3d at 1301.

The ALJ provided the following discussion of the opinions of Dr. Morris:

> In July 2005, the claimant sought completion of the SRS disability form from Terry Morris, D.O. On the form, the doctor noted musculoskeletal (degenerative back) and digestive problems (fibrosis of the lungs) with an inability to work (exhibit 14F). However, his treatment notes do not indicate significant complaints or limitations (exhibit 7F, 11F, 15F). Dr. Morris also completed a summary letter dated March 1, 2007 with medical source statement for physical and mental limitations (exhibit 16F). The letter noted a gradual decline in health with some memory loss, back pain and discomfort, respiratory issues and depression. However, the limitations on the assessments were very restrictive. He opined that the claimant was limited to lifting or carrying less than 5 pounds frequently and 10 pounds occasionally, sitting less than 1 hour in an 8 hour work day, and standing or walking less than 1 hour in an 8 hour work day with no climbing, balancing, stooping, kneeling, crouching or crawling and the need to avoid any cold, heat, wetness, humidity, dust, fumes, vibration, hazards and heights. He went on to complete a mental health statement noting moderate to marked limitations in most all areas of function. Out of 20 areas of function regarding understanding and memory, sustained concentration and persistence, social interaction and adaptation, he found marked limitations in 10 areas and moderate limitations in 7 areas of function (exhibit 16F). A review of Dr. Morris' records indicates occasional treatment beginning in December 2004 for routine health care with a break in treatment from August 13, 2005 (exhibit 11F/82) to November 21, 2006 (exhibit 15F/104). The doctor has only seen the claimant twice in 2006 with a second

> visit on December 7, 2006. These records only
> document the claimant's subjective complaints
> without any testing. The doctor, a general
> practitioner, prescribed Prozac in November
> 2006 based on the claimant's complaint of
> depression. The claimant reported improvement
> at the second and apparently last appointment
> on December 7, 2006. Therefore, this is not
> consistent with the doctor's report of marked
> to moderate mental limitations.

(R. at 18).  Later, the ALJ then stated in regards to the opinions of Dr. Morris:

> ...these limitations were not supported by
> the medical evidence.  At the claimant's
> request, the doctor provided assessments
> indicating virtually no sustained
> functionality which is clearly contradicted
> by the testimony and claim related
> information.  As these opinions are not
> supported by the record as a whole, they
> cannot be given controlling weight.

(R. at 20).

The ALJ stated that he was not giving controlling weight to the opinions of Dr. Morris.  The court finds that there is substantial evidence in the record that is not consistent with the opinions of Dr. Morris.  For example, the consultative examination by Dr. Schwartz (R. at 244-245) and the psychiatric review technique form filled out by Dr. Blum (R. at 248-260) do not support the opinion of Dr. Morris that plaintiff is moderately limited in 7 categories and markedly limited in 10 categories (out of 20 categories of mental limitations) (R. at 305-306).

However, the ALJ did not expressly indicate what weight, if

any, he accorded to the opinions of Dr. Morris.  Furthermore, it is not at all clear from the ALJ's decision, what weight, if any, he accorded to the opinions of Dr. Morris.  Dr. Morris opined that plaintiff could frequently lift and/or carry less than 5 pounds and could occasionally lift and/or carry 10 pounds.  He opined that plaintiff could stand and/or walk less than 1 hour in an 8 hour day, and could sit for less than 1 hour in an 8 hour day.  Dr. Morris also found that plaintiff had numerous postural, manipulative, and environmental limitations, and would need to lie down during an 8 hour workday because of pain.[1]  He further stated that plaintiff's medication caused a decrease in concentration, persistence or pace (R. at 302-304).

The ALJ's RFC findings stated that plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally, could sit and stand/walk for 6 hours in an 8 hour workday, with no repetitive bending, stooping, crouching, squatting and position change at 15-30 minute intervals with no concentrated exposure to fumes or pollutants (R. at 16).  The ALJ noted that the state agency consultants found no physical impairment, but the ALJ concluded that additional evidence in the record

---

[1]Specifically, Dr. Morris opined that plaintiff should never climb, balance, stoop, kneel, crouch, crawl, and only occasionally reach, handle, hear and see (near acuity).  He further opined that plaintiff should avoid all extreme cold and heat, wetness/humidity, dust/fumes, vibration, hazards, and heights (R. at 303).

indicated that the plaintiff was more limited (R. at 20). Thus, the ALJ made RFC findings less restrictive than those set forth by Dr. Morris, but more restrictive than the opinion of the state agency physician who found that plaintiff had no impairments.

Based on the medical opinion evidence and the RFC findings by the ALJ, it is not at all clear what weight, if any, the ALJ accorded to the opinions of Dr. Morris. The ALJ failed to state what weight, if any, he gave to the opinions of Dr. Morris. The ALJ made RFC findings that rejected the opinion of the state agency physician that plaintiff had no physical impairments, and found that plaintiff had numerous limitations. However, contrary to SSR 96-8p, the ALJ failed to include a narrative discussion describing how the evidence supported his RFC assessment, citing specific medical facts and nonmedical evidence. 1996 WL 374184 at *7. The ALJ found that plaintiff had limitations in some areas in which Dr. Morris had found limitations, but the ALJ's RFC findings did not indicate that plaintiff was as limited as Dr. Morris had opined. In the absence of any other explanation for his specific RFC findings, it appears that the ALJ may have given some weight to the opinions of Dr. Morris. However, because of plaintiff's failure to comply with SSR 96-8p, the court cannot tell if the ALJ assigned some weight to the opinions of Dr. Morris, or if he rejected Dr. Morris's opinions entirely and relied on other evidence in support of his RFC findings.

Resolving the "controlling weight" issue does not end the court's review. After considering the pertinent factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion. If the ALJ rejects the opinion completely, he must give, specific, legitimate reasons for doing so. Here, the ALJ failed to articulate the weight, if any, he gave to the opinions of Dr. Morris, and he failed to explain the reasons for assigning that weight or for rejecting the opinions altogether. The court cannot presume that the ALJ applied the correct legal standards in considering his opinions. The court must remand because it cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

The court also finds various errors and problems with the ALJ's analysis of the opinions of Dr. Morris which, in combination, also clearly require that the case be remanded. First, the ALJ's discussion of the opinions of Dr. Morris mentioned that his medical records only document plaintiff's subjective complaints without any testing (R. at 18). However, the ALJ failed to mention that Dr. Morris expressly stated that his opinions regarding plaintiff's mental limitations were based on plaintiff's medical history and clinical findings (R. at 306). The medical source statement-physical signed by Dr. Morris also

11

indicates that his responses were based on medical history, clinical findings, laboratory findings, diagnosis and treatment (R. at 304). On July 15, 2005, Dr. Morris had opined that plaintiff had marked difficulty standing or walking which is expected to persist for at least 12 months and results in severe functional limitation (R. at 293). He further opined at that time that plaintiff had chronic inflammatory disease of the digestive system resulting in severe functional impairment (R. at 294). Dr. Morris stated that a physical examination was required so that he could complete the form (R. at 297). Therefore, Dr. Morris clearly indicates that he did not rely only on plaintiff's subjective complaints in making his opinions, but relied on plaintiff's medical history, clinical findings, and physical examination of the plaintiff. Therefore, the ALJ cannot reject the opinions of Dr. Morris based on speculation that those opinions are nothing more than restatements of plaintiff's subjective complaints. Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004); Victory v. Barnhart, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005); Hutchinson v. Astrue, Case No. 07-1293-MLB (D. Kan. June 6, 2008; Doc. 14 at 9-12).

Second, the ALJ also stated that plaintiff reported improvement in plaintiff's depression at his appointment on December 7, 2006 after being prescribed Prozac. The ALJ then asserts that this fact is not consistent with the report of Dr.

12

Morris that plaintiff had numerous marked and moderate mental limitations (R. at 18). As the ALJ noted, Dr. Morris prescribed Prozac for the plaintiff on November 21, 2006, after stating that plaintiff "seems to be very depressed" (R. at 299). At the next appointment, on December 7, 2006, Dr. Morris stated the following: "...continued depression but he stated that there was **slight** improvement when he had been using Prozac" (R. at 299, emphasis added). The court does not find that a "slight" improvement after using Prozac is clearly inconsistent with the opinion of Dr. Morris that plaintiff has numerous marked and moderate mental limitations.

Third, the ALJ also stated that plaintiff's treatment notes with Dr. Morris "do not indicate significant complaints or limitations" (R. at 18). However, a review of the medical notes from November 21, 2006 state the following:

> ...He was having severe pain of the lower back area, severe pain at the spot between the shoulder blades. He is having pain in both hips and having difficulties with his ambulation...he seems to be very depressed...He is not able to work and he has had noted difficulties with the severe pain restricting his ability to work.
>
> Clinical impression:...Severe pain of the shoulders, arms, hips and back with degenerative changes.

(R. at 299). The medical notes from December 7, 2006 state the following:

> This patient came in with complaint of having

13

>     continued wheezing, coughing and congestion,
>     continued depression but he stated there was
>     slight improvement when he had been using
>     Prozac. He also mentioned that he finds
>     himself aching and his back continues to
>     remain in notable pain. He states he finds
>     difficult getting up and down and even
>     ambulating at times...

(R. at 299). A review of these records does in fact show significant complaints and limitations, including severe pain, severe depression, difficulties with getting up and down and difficulties with ambulation. The ALJ's claim that the medical records of Dr. Morris do not show significant complaints or limitations is not supported by the evidence.

Finally, the ALJ stated that the limitations opined by Dr. Morris "were not supported in the medical evidence" (R. at 20). However, the ALJ did not articulate why he believed the medical evidence did not support these limitations. As noted above, some of the treatment notes of Dr. Morris did in fact show significant complaints and limitations, although they did not mention the specific limitations set forth by Dr. Morris on March 1, 2007. Dr. Morris indicated his opinions were based on plaintiff's medical history, clinical findings, and physical examination of the plaintiff. If, on remand, the ALJ again finds that the limitations of Dr. Morris are not supported by the medical evidence, the ALJ shall set forth why he believes the medical evidence did not support those limitations. On remand, the ALJ is reminded that he may not make speculative inferences from

14

medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.  McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).

**IV.  Did the ALJ err by not ordering a physical consultative examination of the plaintiff?**

Plaintiff alleges that the ALJ erred by not ordering a physical consultative examination (Doc. 6 at 27).  Defendant argues that there was sufficient evidence in the record for the ALJ to make physical RFC findings without ordering a physical consultative examination (Doc. 11 at 7-10).

The only medical evidence addressing plaintiff's RFC is that of Dr. Morris, plaintiff's treating physician, and the state agency physician.  The state agency physician found that plaintiff had no physical impairments, but the ALJ rejected that opinion.  The ALJ did not give controlling weight to the opinion of Dr. Morris, and did not include in his RFC findings the severe degree of limitations opined by Dr. Morris.

In the recent case of Fleetwood v. Barnhart, 211 Fed. Appx. 736 (10th Cir. Jan. 4, 2007), the ALJ relied on a state agency medical consultant who filled out a check-the-box evaluation form, which, standing alone, the court found did not constitute substantial evidence.  The court stated that no other medical

15

evidence in the record specifically addressed her ability to work. The court held as follows:

> To the extent there is very little medical evidence directly addressing Ms. Fleetwood's RFC, the ALJ made unsupported findings concerning her functional abilities. Without evidence to support his findings, the ALJ was not in a position to make an RFC determination.
>
> The ALJ's inability to make proper RFC "findings may have sprung from his failure to develop a sufficient record on which those findings could be based." Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir.1994). The ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." Soc. Sec. R. 96-8p, 1996 WL 374184, at *5. Because the disability hearing is nonadversarial, an ALJ is obligated to develop the record even where, as here, the claimant is represented by counsel. Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir.1993); accord Hawkins v. Chater, 113 F.3d 1162, 1164, 1168 (10th Cir.1997). Even though Ms. Fleetwood's counsel did not request any additional record development, the need for additional evidence is so clearly established in this record that the ALJ was obliged to obtain more evidence regarding her functional limitations. See Hawkins, 113 F.3d at 1167-68.

Fleetwood, 211 Fed. Appx. at 740-741. See Heslop v. Astrue, Case No. 06-1343-WEB (D. Kan. Dec. 5, 2007, Doc. 14 at 11-13)(court found ALJ made unsupported RFC findings when the only medical evidence regarding plaintiff's RFC, from the plaintiff's treating physician, was rejected by the ALJ).

In the case before the court (Cox), the only medical evidence before the court directly addressing plaintiff's RFC was

16

either rejected or given little weight. Furthermore, the ALJ failed to articulate what evidence served as the basis for his RFC findings as required by SSR 96-8p. Therefore, the court finds that the ALJ made unsupported findings concerning plaintiff's functional abilities.

When this case is remanded, the ALJ shall develop a sufficient record on which to make RFC findings. In order to develop a sufficient record, the ALJ should consider: (1) recontacting Dr. Morris (and/or another treating physician) in order to seek additional evidence or clarification of their opinions regarding plaintiff's RFC, 20 C.F.R. § 1512(e); (2) obtaining a consultative examination, 20 C.F.R. § 404.1519a, including a statement from the examiner setting forth what plaintiff can still do despite his impairments, 20 C.F.R. 404.1519n(c)(6); and/or (3) having a medical expert testify at the hearing regarding plaintiff's physical RFC in light of the evidence of record.[2]

---

[2] The U.S. Supreme Court has considered the use of medical advisors at administrative hearings and approved of the concept. Richardson v. Perales, 402 U.S. 389, 408 (1971). Such opinions are competent evidence and in appropriate circumstances may constitute substantial evidence supporting the ALJ's decision. Lopez v. Apfel, 1997 WL 758831 at *2 (10th Cir. Dec. 9, 1997)(ALJ properly relied on opinions of medical advisor and consulting physicians who disagreed with treating physician on issue of disability); Torres v. Secretary of HHS, 870 F.2d 742, 744 (1st Cir. 1989)(the testimony of a medical advisor who reviews the record, testifies and is subject to cross-examination may constitute substantial evidence depending on the circumstances, including the nature of the illness and the information provided

**V. Did the ALJ err by not addressing the lay witness testimony of Katy Prowse?**

At the hearing before the ALJ, Katy Prowse, plaintiff's girlfriend, testified (R. at 350-353). The ALJ summarized her testimony at the hearing, but did not make credibility findings regarding her testimony (R. at 19). Plaintiff argues that the ALJ erred by not making express credibility findings regarding her testimony (doc. 6 at 28).

This case is governed by the court's holding in Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996), in which the court held as follows:

> Claimant also alleges that the ALJ erred by not stating specifically his findings on claimant's wife's credibility. Generally, credibility determinations are the province of the ALJ, "the individual optimally positioned to observe and assess witness credibility." [citation omitted] One of the factors an ALJ should consider in evaluating the evidence of nonexertional impairment is "the motivation of and relationship between the claimant and other witnesses." [citation omitted]
>
> Here, it is clear that the ALJ considered the testimony of claimant's wife in making his decision because he specifically referred to it in his written opinion. [citation to record omitted] We decline claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony.

---

to the advisor).

Plaintiff appears to argue that the case of Blea v. Barnhart, 466 F.3d 903, 915 (10th Cir. 2006) requires the ALJ to make express findings regarding the credibility of the witness.  However, Blea, citing to Adams, reaffirmed that "the ALJ is not required to make specific written findings of credibility only if 'the written decision reflects that the ALJ considered the testimony.' Id.  In Blea, the ALJ erred by making no mention of the testimony of the witness.  Id.  In the case before the court (Cox), because the ALJ did expressly consider the testimony of Ms. Prowse, the ALJ did not err by not making specific written findings regarding the credibility of the witness.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on August 15, 2008.


                              s/John Thomas Reid
                              JOHN THOMAS REID
                              United States Magistrate Judge